Judge Mills
delivered the opinion.
Robert C. Bullock brought an action of debt in the court below, against Joseph H. Hudnut and Allen Hudnut, on a note given by them to Thomas M. Donovan, and by him assigned to said Bullock. To this acuon the defendants pleaded three several pleas — the third ot which is in sub *300 stance as follows: “That the said note was given and exe-. cu,e<^ 111 consideration of a bargain and contract entered into between the said Allen Hudnut and the plaintiff’s assignor, one Thomas M Donovan, to whom the said Alien was bound by his father to learn the trade and art of saddle-tree-maker, and while the said Allen was his apprentice boy, to wit, of the age of fifteen years and seven months, and which contract was as follows: that the said Thomas M Donovan should sell out to the said Allen his time then to come of five years and five months, and which he was bound to serve him, the said Tbonias, to learn the trade of a saddle-tree maker, in consideration that the said Allen would execute to him, the said Thomas M. Donovan, five notes of one hundred dollars each, payable annually, a¡ d give security in the same, making in all five hundred dollars, for the lera sold out by the said master to the said apprentice, which he had to serve as afoiesaid. And the said deieudants aver that the note now sued on is the third note becoming due and payable, the two first being paid and taken up, and that no other consideration, good and valid in law, was given or passed by the said Donovan or any Other person to the said defendants' for the same.” This plea was pleaded by both the defendants, to wit, the infant by his guardian, and the other by his counsel, and was demurred to by the plaintiff, and the demurrer sustained; and to this deciiion this writ of error is prosecuted.
A contract miibter' atid an infant prentice is ble nor'fs a contrac; by which the master setts apprentice his time to auuitappren" tice who has bound him-scil chthecon" tract.
From this state of the case the question arises, is the contract between a master and an infant apprentice, buy-i(1g 0U( i¡(Ce 0p j¡le apprentice, bound by bis father, a-ga‘llSt tfie policy of the law, aud such a contract as the will not enforce?
in every well regulated government, where arts and trac*es arei anc' be necessary, the law has kept a jealous eye over the relation between master and apprentice. It ⅛ an acknowledged principle in our code, that the contract binding an infant apprentice is one of a personal nature, based on the confidence placed in the skill, capacity, and care of the master himself, and therefore the apprentice vanuot be assigned and set over to the instruction, provision ani^ car* °* any other person, even though it may be apparent that the new master could and would teach and instruct to as great an advantage as the first. Hence the re-*at‘on's not transferable by the master, and cannot be confided to other hands, i in England, the exercise of a trade, *301 without the service of an apprenticeship, has been made penal. It is important, «ven to society, that every tradesman should be qualified to pursue ihe trade which he exercises, in the employment of others; and it is still more important to the apprentice that he should actually acquire the trade to which his parent has bound him, for the purpose of enabling him to get his living. The obligations of a master to an infant apprentice ought to be held sacred; and too great facilities ought not to be afforded to him, in dissolving these obligations. The apprentice ought to be kept in his duty, strictly, and not be allowed to believe that be can, by contract, discharge himself from the station, to which his parent has assigned him. Infants are not allowed to act for themselves, and bence the law provides for their being at all times subject to the control and disposition of a parent, guardian or master. Leave them to themselves, or allow them to purchase their freedom, whenever it may bt in their power, and experience will soon demonstrate, that their want of capacity, united with their youthful follies and inexperience, will make them bad citizens instead of industrious tradesmen. Kor these reasons we conceive it is a good general rule, that the policy of the law forbids the coercion of a contract, in which the master, by negotiation, has sold out the time of his infant apprentice bound by the father, and has agreed to receive a pecuniary consideration for a release from his own duties, and for placing the infant into the world at random, in the enjoyment of a liberty which may prove ruinous to himself, and injurious to others. We do not say that a case may not exist where such a contract might not he binding; but if there be such an exception, it devolves on the party claiming the benefit, to shew it; and this case, now on record, does not warrant such exception in its favor.
We have deemed it unnecessary particularly to notice''1 the first and second plea. They attempt to plead the same ■ • matter, but neither of them shew that the apprentice was an infant, or who bound him as such, and he is barely call- f ed an apprentice boy. And as for any thing that certainly : appears from these pleas, he might have bound himself at \ full age, it was competent for him in such circumstances to \ rescind the contract. These pleas are therefore deemed \ invalid, and were rightly overruled, by the court below — But the decision on the third plea is deemed erroneous, and thejudgment must be reversed with costs, with directions *302 fo overrule the demurrer thereto, unless the plaintiff shall tender a valid replication, and move to withdraw his demurrer.
Bibb for plaintiff.